JOHNSON *v*. THE STATE.

No. 9887.   November 15, 1933.

*Gilmore & Cork* and *Maurice C. Thomas,* for plaintiff in error.

*M. J. Yeomans, attorney-general, Charles H. Garrett, solicitor-general, B. D. Murphy* and *J. T. Goree, assistant attorneys-general,* and *E. J. Clower,* contra.

Gilbert, J.   Frank Johnson was convicted of the offense of murder.   On the call of the case, and before arraignment, the accused filed his plea in abatement to the indictment.   The plea was based upon two grounds:   (a)   That the grand jury which found the indictment was illegally constituted.   (b)   That the witnesses before the grand jury were not sworn in the manner provided by law."

The fact upon which the first ground is based, that is that the grand jury which found this indictment "was illegally constituted," as stated in the plea, is that the presiding judge, Hon. Malcolm D. Jones, appointed a foreman of the grand jury.   It is insisted that "it was the practice" in the court and in all superior courts in this State "to allow the grand jury to select its own foreman by ballot after it had retired for that purpose, without making any suggestion as to the court's choice for foreman and without making any appointment of a foreman."   The plea also "avers that the laws of the State of Georgia require that the grand jury select its own foreman."

It is not contended by counsel for plaintiff in error in their brief that there is any statute which requires the foreman to be elected by the grand jury, nor is it suggested that there is any statute forbidding the judge of the superior court to appoint a foreman. The contention of the plaintiff in error is based solely upon the practice which it is contended has always prevailed and now prevails in this State.   This question has not heretofore been decided by this

court. The Civil Code (1910), § 4850, deals with the authority of the judges of the superior court; and after enumerating in several subsections various powers, in subsection 6 it declares that "The judges of the superior courts have authority . . to administer oaths and to exercise *all other powers* [italics ours] necessarily appertaining to their jurisdiction, or which may be granted them by law." The phrase "all other powers necessarily appertaining to their jurisdiction" is broad and comprehensive. It is declared in § 4644, subsection 4: "Every court has power . . To control, in furtherance of justice, the conduct of its officers and all other persons connected with a judicial proceeding before it, in every matter appertaining thereto." The superior court is a court of general jurisdiction, and is the highest in rank of all trial courts in this State. It possesses inherent powers not specifically granted. Its judges are charged with the duty of administering justice and with maintaining the dignity and authority of the court. In *Crosby* v. *Potls,* 8 *Ga. App.* 463 (69 S. E. 582), Judge Powell, in an able opinion in which both of his associates concurred, dealt with a similar, but not precise question. In that case the court dealt with the power of the trial court to require the attendance of witnesses to testify in the case. The court said, in a headnote: "The courts, as an arm of the State, have the inherent power adequately to control, in the furtherance of justice, officers, parties, jurors, witnesses, and others connected with a pending case." In the opinion it was said: "The fact that no precedent of a common-law court's having done the precise thing done in this case does not negative the fact that the courts did have the power. As Professor Wigmore says in his great work on Evidence, speaking along this general line, 'But how culpable is this self-stultifying concession by a court of justice that it knows of no process to execute its powers for enforcing a conceded duty? There can not be a precise precedent for everything. Where there is a clearly established principle, the lack of a precedent is no obstacle. There must some time be a first precedent. Were the judges of Charles II or George III, who themselves were but the followers of six centuries of royal judges, the last generation vested with the authority to apply old principles in new forms? Nobody has been able to find any definite authority for the duces tecum form of subpœna; but the judges of 1808 were not moved by such trifling; such a power, they de-

clared, is 'essential to the very existence and constitution of a court of common law.' The mere phrasing of an auxiliary writ is not to stand in the way of inherent powers. Is there any known precedent of a writ to a court bailiff ordering him to shut the doors to keep out an excessive throng, or to open the windows to let in fresh air? But no judge ever refrains from such orders because he has never seen such a form. The ordinary subpœna for a witness is of no avail when he is in prison; but the judges—somebody, some time, no one knows who or when—varied the form of words and ordered the jailer habeas corpus ad testificandum. They did not supinely sit and watch justice defrauded of testimony because the usual piece of parchment did not precisely fit the exigency."

In *Southern Express Co.* v. *Maddox, 3 Ga. App.* 223 (59 S. E. 821), the court dealt with the legality of a verdict where the presiding judge caused the verdict actually rendered to be signed by one of the jurors designated by the judge as foreman. The court held that such a verdict was valid and binding. In the opinion the court recognized the existing practice that when a verdict is agreed upon it should be written upon the initial pleading, dated and signed by one of the jurors as foreman, but held that "none of these details are mandatory," and that "It is the right of each of the parties that each juror should agree to the verdict—without this it is no verdict. . . The only question is, how is it to be ascertained that the jury have agreed? . . In this State the jury may legally express their agreement through an unsigned verdict. *Roberts* v. *State, 14 Ga.* 18 (58 Am. D. 528) ; *Harris* v. *Barden, 24 Ga.* 72; *Patterson* v. *Murphy, 63 Ga.* 281. Even after the jury has been dispersed, the court may allow one of the jurors to sign as foreman a verdict previously rendered. *Avera* v. *Tool, 74 Ga.* 398. While the foreman is usually selected by the jury itself, there is no reason why he should not be designated by the presiding judge." In fact the designation by the judge may in some cases amount to an economy in time. An instance of such a case is given by Judge Powell in *Southern Express Co.* v. *Maddox*, supra, based upon "an old story current in bar circles," where, after remaining out three days, a jury came into court and announced to the judge that they had not been able to agree upon a foreman. Judge Powell concludes: "In such cases, law as well as expediency allows the judge to direct a juror to act as foreman." According

to the uniform practice in Federal courts, the presiding judge appoints the foreman of juries. The brief of the attorney-general calls attention to the fact that in some state courts the presiding judge appoints the foreman; but it is unnecessary to consider the statutes or practice in other States. It has been held by this court: "It is not error to overrule a plea in abatement to the indictment returned against one charged with murder, where the indictment is not only regular on its face, but where it appears that the foreman of the grand jury, and each member thereof who participated in the finding of the indictment, were regularly summoned and impaneled according to law, under the direction and approval of the presiding judge." *Dickens* v. *State,* 137 *Ga.* 523 (73 S. E. 826).

From what has been said we think it is clear that, notwithstanding the practice, the judge of the superior court has the power to appoint a foreman of the grand jury. He may exercise that power by himself making the appointment or by requiring the grand jury to elect its own foreman. Where the latter course is pursued, it is based upon the authority delegated by the judge to the grand jury, and is equivalent to the exercise of the authority by the judge himself. Even if it had become a custom for the grand jury to elect its foreman with or without authority from the judge, "a law can not be repealed by adoption of a custom in violation of law." *Hornady* v. *Goodman,* 167 *Ga.* 555 (7) (146 S. E. 173).

It is insisted that the indictment should have been quashed because the witnesses before the grand jury were sworn by the foreman appointed by the court, and not by a foreman elected by the grand jury. The decision on the question discussed above would seem to settle this question. Logically, if the appointment of a foreman by the court is lawful, and that foreman administered the oath to the witnesses, they were sworn according to law. Moreover, the Penal Code, § 835, provides: "The foreman of each grand jury *may* [italics ours] administer the oath prescribed by law to all witnesses required to testify before such grand jury, and *may* also examine such witnesses." It will be observed that this section does not confer exclusive or mandatory power upon the foreman to administer the oath or to examine the witnesses. That is made more apparent by reference to the statute from which the Code section is derived. That statute provides: "It shall and

may be lawful for the foreman . . to administer the oath now prescribed by law to witnesses required before the grand jury." The practice had been that all witnesses who were required to testify before the grand jury were sworn in open court by the judge or some one directed by him to administer the oath. In the interest of economy of time a statute was enacted which merely makes it lawful for the foreman to administer the oath. Since the passage of that act it has been the usual custom for the foreman or the solicitor-general to administer the oaths required by law to witnesses before the grand jury. Undoubtedly an oath administered by the solicitor-general or any member of the grand jury by request or direction of the foreman would be equally lawful. The solicitor-general, when in attendance upon the grand jury, usually examines the witnesses. The foreman may do so. There is no statute in this State requiring the foreman to sign his name on the back of the bill of indictment or special presentment under the words "true bill," but it is a practice for the foreman to do so. In *McGuffie* v. *State*, 17 *Ga.* 497, 510, it was sought to arrest a judgment in a criminal case "because the return and endorsement of 'true bill' upon the indictment was not signed by any one, as *foreman* of the grand jury. The court said: "Upon this point we remark, first, that it has been held that there is no positive law requiring that the foreman of the grand jury should sign the finding at all. This seems not to have been required at common law. And so it has been decided in South Carolina. Creighton *v.* Bell, 1 Nott & McC. (10 S. C. L.) 256. Our statutes make no change in this respect. Though, as the court says, in the case just cited, we think the practice usually adopted is advisable. In the next place, we observe that this return seems to have been signed by a juror; but he did not sign as foreman. It could easily have been made certain by the minutes of the court, however, we suppose, that he was foreman of the jury; and if so, this might have been done; for in such case, *that is certain which may be made certain.*"

In *Taylor* v. *State*, 121 *Ga.* 362 (49 S. E. 317), the court cited approvingly *McGuffie* v. *State,* supra, and said: "There is no statutory requirement that one of the grand jurors should be designated as foreman in the indictment." There one grand juror had signed the indictment, "true bill, O. C. Bateman, foreman." In the body of the indictment the names of the twenty-three mem-

bers of the jury appeared, including that of Bateman, but the word "foreman" was written "to the right of the name R. G. Blewster." There was a demurrer to the indictment, on the ground that the face of the indictment showed Blewster as foreman, while Bateman had signed as foreman on the back of the indictment under the words "true bill." The demurrer was overruled, and that judgment was affirmed by this court.

We conclude, and so rule, that a plea in abatement based upon the ground that the oaths to the witnesses sworn before the grand jury in this case were not lawfully administered is without merit. The plea in abatement was properly dismissed.

2. The verdict is supported by evidence.

*Judgment affirmed. All the Justices concur.*