### 75526. O'NEAL v. THE STATE.
(365 SE2d 894)

Pope, Judge.

Appellant was found not guilty by reason of insanity of the offenses of murder and aggravated assault and was ordered committed to a state hospital for the mentally ill. Appellant subsequently filed several petitions for release pursuant to OCGA § 17-7-131 (f), contending that he no longer met the civil commitment criteria contained in OCGA § 37-3-1 et seq. On each occasion the committing court denied appellant's petitions for release based on a finding that appellant presented a substantial risk of harm to himself or others.

Appellant subsequently sought the court's written permission to participate in a treatment plan designed to provide increased levels of responsibility both within the confines of the hospital and in the community. Under the final phase of the program, and as deemed appropriate by the staff of the hospital, appellant could eventually be awarded certain off-campus privileges to pursue educational or treatment programs not available to him at the treating facility. The committing court denied appellant's request and held that it lacked the authority to grant or deny "privileges" to an insanity acquittee. The court further provided that "[t]he word 'privileges' as used herein means the authority to have the patient released from custody for educational or other purposes." *Held*:

OCGA § 17-7-131, which governs the procedures to be followed upon a finding of not guilty by reason of insanity, specifically provides that "[w]henever a defendant is found not guilty by reason of insanity at the time of the crime, the court shall retain jurisdiction over the person so acquitted. . . ." OCGA § 17-7-131 (d). The statute also provides that "[i]n all cases in which the defense of insanity is interposed, the trial judge shall charge the jury . . . that should [the jury] find the defendant not guilty by reason of insanity at the time of the crime, this court will maintain custody and control of the defendant until the court is satisfied that the defendant is not a danger to himself or to others." OCGA § 17-7-131 (b) (3) (A). Lastly, the statute provides that an insanity acquittee may only be discharged from commitment by order of the committing court. OCGA § 17-7-131 (f). "The intent of the legislature is clear beyond cavil that the committing court retains jurisdiction of the acquitted-committed defendant." *Moses v. State*, 167 Ga. App. 556, 557 (307 SE2d 35) (1983).

The question presented by the present case is whether the committing court is empowered to render decisions allowing the insanity

acquittee to enjoy a status which lies somewhere between total confinement and unconditional release. "OCGA § 17-7-131 [f] merely *allows* for release if the civil commitment criteria is not met and continued commitment if such criteria is present. The section, therefore, does not preclude a superior [committing] court from rendering any other decision it deems reasonably necessary. A superior court has general and broad powers in cases over which it has jurisdiction. See *Johnson v. State*, 177 Ga. 881 (1a) (171 SE 699) (1933). Subsections (4) and (8) of OCGA § 15-6-9 provide that superior courts have authority to 'exercise all other powers necessarily appertaining to their jurisdiction' and to 'grant all other writs . . . which may be necessary to the exercise of their jurisdiction and which are not expressly prohibited.' " *Roberts v. Grigsby*, 177 Ga. App. 377, 385 (339 SE2d 633) (1985) (Pope, J., concurring specially).

"The purpose of commitment following an insanity acquittal, like that of civil commitment, is to treat the individual's mental illness and protect him and society from his potential dangerousness." *Jones v. United States*, 463 U. S. 354, 368 (103 SC 3043, 77 LE2d 694) (1983). Under OCGA § 17-7-131 (e) (5) the insanity acquittee is accorded "the right to have established an individualized service plan specifically tailored to the person's treatment needs, as such plans are defined in Chapter 3 of Title 37 and Chapter 4 of Title 37." Pursuant to OCGA § 37-3-1 (9) an " 'Individualized service plan' means a proposal developed during a patient's stay in a facility and which is specifically tailored to the individual patient's treatment needs. Each plan shall clearly include the following:

"(A) A statement of treatment goals or objectives, based upon and related to a proper evaluation, which can be reasonably achieved within a designated time interval;

"(B) Treatment methods and procedures to be used to obtain these goals, which methods and procedures are related to these goals and which include a specific prognosis for achieving these goals;

"(C) Identification of the types of professional personnel who will carry out the treatment and procedures, including appropriate medical or other professional involvement by a physician or other health professional properly qualified to fulfill legal requirements mandated under state and federal law;

"(D) Documentation of patient involvement and, if applicable, the patient's accordance with the service plan; and

"(E) A statement attesting that the chief medical officer has made a reasonable effort to meet the plan's individualized treatment goals in the least restrictive environment possible closest to the patient's home community."

In the present case, appellant sought permission to have a phases of responsibility program incorporated into his individualized service

plan. Under such a program, appellant's treatment would include placing him in increasingly unstructured and unsupervised situations, or, as mandated by OCGA § 37-3-1 (9) (E) in the "least restrictive environment possible." However, as stated hereinabove, in addition to the goal of treatment, it is also necessary in the case of insanity acquittees to protect both the acquittee and society from his potential dangerousness. Thus, any proposed treatment plan or program must be implemented with these twin goals in mind. Based on the committing court's continuing jurisdiction over the insanity acquittee and recognizing "[the state's] interest in invoking the judiciary's expertise in criminal matters," *Benham v. Ledbetter*, 785 F2d 1480, 1489 (11th Cir. 1986), we hold that a committing court has the authority to allow an insanity acquittee to pursue treatment, educational or other goals outside of the confines of the treating facility.

By so holding, however, we do not mean to suggest that a committing court is mandated to approve such a plan. As is the case in a petition seeking an outright release of the insanity acquittee, "[t]he [committing] court is entirely free to reject the recommendation of the staff of the institution." *Loftin v. State*, 180 Ga. App. 613, 615 (349 SE2d 777) (1986); see also *Arnold v. State*, 173 Ga. App. 839 (328 SE2d 572) (1985). Rather, we hold only that the jurisdiction afforded committing courts pursuant to OCGA § 17-7-131 is not limited to the rendition of the initial commitment order and final release decision, but also encompasses the authority to render all other decisions necessary for the treatment of the insanity acquittee as well as those decisions necessary to ensure both the acquittee's safety and the safety of the community.

The judgment of the court below is reversed, and this case is remanded to the court for further proceedings not inconsistent with this opinion.

*Judgment reversed and case remanded. Birdsong, C. J., Banke, P. J., Carley and Benham, JJ., concur. Beasley, J., concurs in judgment only. Deen, P. J., McMurray, P. J., and Sognier, J., dissent.*

DEEN, Presiding Judge, dissenting.

The majority opinion holds that "a committing court has the authority to allow an insanity acquittee to pursue treatment, educational or other goals outside of the confines of the treating facility." I find no statutory authorization for such, view as mistaken any assumption of such authority under a theory of inherent power, and consider any kind of partial release of an insanity acquittee to be unwise; accordingly, I must dissent.

The commitment and release provisions of OCGA § 17-7-131 are fairly explicit. An insanity acquittee who is committed to the Department of Human Resources under OCGA § 17-7-131 (e) may be dis-

charged from that commitment by the committing court only where the defendant proves that he no longer meets the criteria for civil commitment. (A person meets the criteria for civil commitment if he is mentally ill and presents a substantial risk of imminent harm to himself or others, or if he is mentally ill and so unable to care for his own health and safety as to be life-endangering. OCGA § 37-3-1 (2)). If such a defendant proves that he no longer meets the criteria, he gets released; if he fails to meet that burden of proof, he remains committed.

The provisions of OCGA § 17-7-131 simply do not envision a partial release, the purpose or goal of which presumably would be to increase the defendant's mental health to the point where he no longer meets the criteria and can be released. In assuming the role of super-psychiatrist or judicial legislator, the majority opinion overlooks the practical pitfalls of such a possibility. All the insanity acquittees share two characteristics: they are mentally ill and dangerous. I have grave concerns over "partially releasing" into the community such people, who by law are still mentally ill and dangerous. Sooner or later, one of those "partially released" defendants will kill or rape or maim again; and, sooner or later, the State will be sued over such a "partial release." Compare *Roberts v. Grigsby*, 177 Ga. App. 377 (339 SE2d 633) (1985). The legislature, in its concern for the welfare of society as a whole, wisely provided for no gray area in the matter of release of insanity acquittees. The majority opinion unwisely creates one judicially.

The majority opinion in part extracts authorization for partial release from the term, "least restrictive environment," which permeates Chapters 3 and 4 of Title 37. However, OCGA § 37-3-1 (10) defines that term as "that which is the least restrictive available alternative, environment, or care and treatment, *as appropriate*, within the limits of state funds specifically appropriated therefor." (Emphasis supplied.) Perhaps it would be appropriate to allow an insanity acquittee to participate in educational or less-supervised activities within the facility in which he is committed (if funded), but under no circumstance would I consider it appropriate to allow a partial release into the community of a person who under the law is mentally ill and a substantial risk of harm to himself or others.

DECIDED FEBRUARY 16, 1988.

*Robert G. Rubin, Susan C. Jamieson, Katherine E. Bissell,* for appellant.

*Lewis R. Slaton, District Attorney, Joseph J. Drolet, A. Thomas Jones, Benjamin H. Oehlert III, Assistant District Attorneys,* for ap-

pellee.