## A96A0522. SIKES v. THE STATE.
(472 SE2d 101)

McMURRAY, Presiding Judge.

Hershel Leonard Sikes, who was found not guilty of theft by shoplifting by reason of insanity, appeals from an order denying a

petition for his release from involuntary commitment to the Georgia Department of Human Resources ("DHR"). In so ruling, the trial court recognized that Sikes suffers with a permanent mental disability which, without treatment, manifests the sort of behavior which led to Sikes' insanity plea and determined that "the safety net and compulsion of a court order [is necessary] to mandate [the treatment Sikes requires]." We affirm because the trial court's ruling is authorized by the evidence as well as OCGA § 17-7-131 (e) (5) (B).

On December 3, 1992, the trial court accepted Hershel Leonard Sikes' plea of not guilty of shoplifting by reason of insanity, finding that Sikes' criminal behavior was the result of organic brain damage which occurred during surgery to remove a "brain tumor . . . from the frontal area of his brain in 1979." The trial court ordered Sikes to "remain in the custody of [DHR] to continue his involuntary inpatient treatment for such amount of time recommended by [DHR]." Sikes was thereafter confined and treated at Georgia Mental Health Institute ("GMHI").

On June 2, 1994, the trial court entered an order releasing Sikes from GMHI, conditioned upon restrictions prescribed in a comprehensive treatment plan developed by health care professionals at GMHI. This treatment plan resulted in Sikes' placement in a personal care home and a "weekday" treatment program at a county health care facility. In a letter dated November 4, 1994, a GMHI "Staff Psychiatrist" and a GMHI "Forensic Services Coordinator" notified the trial court that "Mr. Sikes was sent back to GMHI on September 12, 1994 after he had been aggressive with a peer in the day treatment program (he squeezed her arm hard after some provocation) and had an incident in a store (he threw a plastic bottle which bounced and hit the clerk)." This letter further provides: "Upon his return to GMHI, [Sikes] exhibited the same level of stable behavior observed before he left on conditional release. He was granted grounds privileges but left the hospital without permission on September 16 and was returned here the following day. He had gone to Underground Atlanta and told someone he was on a pass from GMHI. They were suspicious and called the hospital leading to his return. Given the level of brain damage that occurred as the result of Mr. Sikes' brain tumor many years ago, some degree of impulsive behavior is to be expected. It is our opinion that he can safely be returned to conditional release status, in which he is living in a personal care home and attending day treatment. However, Mr. Sikes' recent AWOL is behavior not previously presented to the court. We are therefore requesting your authorization to return him to conditional release. If you are in agreement with this plan, please indicate by checking the appropriate line below and signing."

In a letter dated August 10, 1995, the GMHI health care profes-

sionals, who reported Sikes' "aggressive" behavior and impulsive excursion to "Underground Atlanta," urged the trial court to release Sikes from commitment to DHR. This letter provides as follows: "This letter constitutes a petition for the full release of Hershel Sikes. . . . Mr. Sikes has done quite well on conditional release. He required rehospitalization on one occasion, (September, 1994) when he became angry and combative at the personal care home. Although he briefly went AWOL, he exhibited no aggressive behavior while in the hospital and was returned to the same out-patient program. He attends the day treatment program five days per week and takes seizure medication. He is not receiving any psychiatric medications and has been free of threatening, violent or criminal behavior. . . . It is our opinion that Mr. Sikes no longer meets either the inpatient or outpatient commitment criteria of OCGA 37-3 or 37-4. We therefore request that Mr. Sikes be fully released. He will continue in the same treatment program after release."[1]

In opposition to the petition for Sikes' release from commitment to DHR, the State's attorney addressed the following letter to the trial court: "GMHI proposes that Mr. Sikes be completely released from their custody. They state he will 'continue in the same treatment program after release.' I must state that I am very concerned by the GMHI letter. Who will make sure that Mr. Sikes continues in his treatment? Why can't GMHI maintain custody of Mr. Sikes to ensure that he remains in the personal care home and receives his outpatient treatment? Why is it necessary to release Mr. Sikes from GMHI custody? . . . Until I know the answers to these questions, my position will be to object to GMHI's request and suggest a hearing is in order. I do not mean any disrespect to GMHI and will perhaps agree completely with their recommendations once these issues are addressed. Lacking any information which indicates how Mr. Sikes will be monitored if fully released, other than us having to go through this procedure again if there are further problems, I must respectfully suggest that the Court deny the request to release this defendant."

The evidence adduced at a hearing on the petition for Sikes' release from DHR reveals that Sikes continues to suffer with the mental disability which led to his 1992 insanity plea; that Sikes "had

---

[1] Neither the GMHI "Staff Psychiatrist" nor the GMHI "Forensic Services Coordinator" who endorsed this letter has authority to petition for Sikes' release from commitment to DHR. OCGA § 17-7-131 (f) (1) provides that such petitions may be made only by the defendant or the superintendent of the state hospital in which the defendant is detained. Nevertheless, the trial court's authority to consider the health care professionals' request for Sikes' release from commitment to DHR is not dispositive of the case sub judice since Sikes' court-appointed attorney endorsed the request for Sikes' release and thereby ratified the GMHI health care professionals' efforts to relinquish DHR's responsibility for Sikes.

several admissions [to health care facilities] and a number of arrests" before his 1992 insanity plea; that these difficulties were the result of inadequate treatment of Sikes' mental disorder; that Sikes did not receive appropriate or stable care and treatment for his mental disability until after his commitment to DHR and that Sikes' mental deficiency, if untreated, will likely result in the sort of criminal behavior that led to his 1992 insanity plea. The trial court also heard proof that Sikes has been enthusiastic, happy and productive under the court-mandated treatment plan; that the structure and care provided under this plan is the best means for combating the effects of Sikes' mental disability; that outbursts of violence and aggression by Sikes while on conditional release from hospitalization resulted in Sikes' return to GMHI in September 1994; that Sikes wandered away from GMHI during this period of hospitalization after being granted "ground privileges" at the hospital; that GMHI was compelled to return Sikes to the hospital after this episode (which involved a trip to Atlanta, Georgia) and that Sikes was unaware, until the hearing on the petition for his release, that "he was under mandate of court[, thinking instead that] he came to [DHR's treatment] program on his own." The trial court later entered an order denying the petition to release Sikes from commitment to DHR, concluding that "the safety net and compulsion of a court order [is necessary] to mandate [the treatment Sikes requires]." This appeal followed. *Held*:

1. Sikes first contends the trial court erred in denying his application for release from commitment to DHR, arguing that he successfully completed all requirements under the conditional release plan and that, as a result, OCGA § 17-7-131 (e) (5) (B) requires his discharge from commitment to DHR. This contention is without merit.

OCGA § 17-7-131 (e) (5) (B) provides that, "[i]f the defendant successfully completes all requirements [under an involuntary treatment plan] during this period of conditional release, the court shall discharge the individual from commitment at the end of that period." This Code subsection further provides, however, that "[t]he court may require the individual to participate in outpatient treatment or any other services or programs authorized by Chapter 3, 4, or 7 of Title 37."[2] While these phrases may appear conflicting when read in isolation and out of context of the statutory scheme, harmony is found when OCGA § 17-7-131 (e) (5) (B) is read in its entirety and examined with an eye toward the purpose of commitment of the criminally insane, i.e., " 'to treat the individual's mental illness and protect him and society from his potential dangerousness.' *Jones v.*

---

[2] Chapters 3, 4 and 7 of Title 37 authorize services and programs for examination, hospitalization, habilitation or treatment for mentally ill persons or for any person for whom such treatment is sought. See OCGA § 37-3-1 (13).

*United States*, 463 U. S. 354, 368 (103 SC 3043, 77 LE2d 694) (1983)." *O'Neal v. State*, 185 Ga. App. 838, 839 (365 SE2d 894). See *Houston v. Lowes of Savannah*, 235 Ga. 201, 203 (219 SE2d 115). From this perspective, we find that OCGA § 17-7-131 (e) (5) (B) provides trial courts with authority for extending involuntary outpatient treatment in any case where a defendant appears to require further "outpatient treatment or any other services or programs authorized by Chapter 3, 4, or 7 of Title 37." OCGA § 17-7-131 (e) (5) (B). The only limitation this subsection appears to impose is requiring restrictive hospitalization where (according to the trial court) a defendant has successfully responded to outpatient treatment. See OCGA § 37-3-1 (12.2). Consequently, since it is undisputed that the denial of Sikes' petition for release does not require treatment of Sikes in a hospital setting and since there is no question that the mental disorder which is the basis of Sikes' insanity plea requires highly structured outpatient treatment, the trial court did not err in denying Sikes' petition for release from commitment to DHR.

2. Sikes challenges the trial court's denial of his petition for release, arguing that he is not subject to involuntary "outpatient treatment" under Chapter 3 of Title 37 because his mental impairment is the result of a "traumatic brain injury" and OCGA § 37-3-1 (16.1) excludes "outpatient treatment" for mental disorders that are the result of a "traumatic brain injury." This assertion is without merit. Sikes was adjudicated mentally ill as defined in OCGA § 17-7-131 (a) (2), not as defined in OCGA § 37-3-1 (11). And as a consequence, the "traumatic brain injury" exclusion in OCGA § 37-3-1 (16.1) does not preclude Sikes' "involuntary treatment" for the mental impairment which is the basis of his insanity plea. To hold otherwise not only ignores the statutory scheme for treating the criminally insane, but is contrary to the goal of protecting the criminally insane " 'and society from [such person's] potential dangerousness.' *Jones v. United States*, 463 U. S. 354, 368[, supra]." *O'Neal v. State*, 185 Ga. App. 838, 839, supra.

3. Sikes challenges the trial court's finding that "the safety net and compulsion of a court order [is necessary] to mandate" the care and treatment prescribed for controlling his mental disorder, arguing that he has wilfully complied with the guidelines set by GMHI's outpatient treatment plan.

Even though there is proof that Sikes performs well under the guidance and structure of outpatient treatment, it is undisputed that Sikes continues to suffer from a mental disorder which subjects him to outbursts of violence, criminal acts and aimless wanderings; that Sikes strayed away from GMHI when he was given "ground privileges" at the hospital on September 16, 1994, and that Sikes' commitment to DHR resulted in his return to GMHI after this episode of

noncompliance. These circumstances, and the presumption of insanity which attached when Sikes was adjudicated not guilty of shoplifting by reason of insanity, authorize the trial court's findings, by a preponderance of the evidence, that Sikes suffers with a permanent mental disability which, without treatment, manifests the sort of behavior which led to Sikes plea of insanity and that "the safety net and compulsion of a court order [is necessary] to mandate [the treatment Sikes requires]." See *Nagel v. State*, 262 Ga. 888, 892 (427 SE2d 490). Accordingly, the trial court did not err in denying the petition for Sikes' release from involuntary commitment to DHR.

*Judgment affirmed. Johnson and Ruffin, JJ., concur.*

DECIDED MAY 14, 1996 —
RECONSIDERATION DENIED MAY 31, 1996 — 

*Marcus & Cullen, Frances E. Cullen, Jill L. Anderson, James C. Bonner, Jr., Debra J. Blum*, for appellant.

*David McDade, District Attorney, William H. McClain, Assistant District Attorney*, for appellee.