**FIRST DIVISION**
**BARNES, P. J.,**
**BROWN and HODGES, JJ.**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**February 8, 2023**

# In the Court of Appeals of Georgia

A22A1350. DELANEY v. THE STATE.

BROWN, Judge.

In 2008, the trial court accepted Yvonne Delaney's plea of not guilty by reason of insanity after she stabbed someone to death in 2005. Delaney now appeals from the trial court's "Order Continuing Unsupervised Conditional Release."[1] She contends that the trial court erred by: (1) failing to discharge her from commitment as she met all the requirements of her conditional release plan; (2) ruling that she had failed to overcome the rebuttable presumption that she continues to require involuntary treatment; and (3) failing to consider all evidence presented at the hearing and

---

[1] In her notice of appeal, Delaney directed it to the Supreme Court of Georgia, which transferred her appeal to this Court after determining that it lacked jurisdiction.

contained in the trial record. For the reasons explained below, we vacate the trial court's order and remand this case to the trial court with direction.

Following the entry of her not guilty by reason of insanity plea, Delaney was confined in a state mental hospital until she was conditionally released on February 19, 2009, at the request of her treatment team. The 2009 conditional release order stated that Delaney "does not meet the criteria for involuntary inpatient commitment as set forth in OCGA § 37-3[-1]" and ordered that she be placed in a "supervised living arrangement" for her to "demonstrate that she can enter and stay with a formal outpatient treatment program and live with supervision as mandated by her care plan." Her conditional release was extended numerous times between 2009 and 2018. The orders typically found that she "currently [met] the criteria for outpatient involuntary treatment" and specified a one-year time period for continued conditional release. None of these orders specifically addressed whether she had successfully completed the requirements of the prior conditional release orders.

In a 2018 hearing, a forensic psychologist with the Georgia Department of Behavioral Health and Development Disabilities and the Director of Department's Community Forensic Outpatient Services, testified that she oversees everyone conditionally released from hospitals in the western part of Georgia, including

Delaney. She testified that Delaney's diagnosis was schizoaffective disorder, bipolar type, that her medications have been successful at eradicating the symptoms of her illness, and that she has not had any symptoms since she was conditionally released into the community. The psychologist recommended that Delaney be fully released because "[s]he has done absolutely beautifully in the community since 2009." At the time of the hearing, she had been married for six years and was living with her husband in an apartment. In the psychologist's opinion, Delaney "no longer fit[ ] inpatient or outpatient civil commitment criteria." She acknowledged that Delaney's symptoms would come back if she did not take her medication and that Delaney stabbed someone to death in 2005 when she stopped taking her medication.

Six weeks later, the trial court issued an "Order for Unsupervised Conditional Release" denying Delaney's request for a full release, finding that she "will require outpatient treatment in order to avoid predictable decompensation and the need to return to inpatient treatment" if she were to stop taking her medications. It ordered her to comply with her latest treatment plan with the modification that she no longer had to be "physically monitored" and could confirm that she was taking her medications by telephone. The order stated no time period for her continued conditional release.

Three years later, Delany filed another petition for release, asserting that she no longer met the criteria for civil commitment. Although she requested a hearing in which she could submit evidence in support of her petition, no transcript appears in the record before this Court. The record contains no order scheduling a hearing, the trial court's subsequent order ruling on the petition does not indicate that a hearing was held, and this Court's communication with the trial court has revealed that no such hearing was held. Delaney's brief before this Court nonetheless states that a hearing was held on June 11, 2021, and cites to a transcript from a hearing that appears to be the one held in 2018. On June 10, 2021, the trial court signed an order denying Delaney's petition, and this order was entered on June 11, 2021 at 8:35 a.m., making it unlikely that a hearing was held on June 11, 2021.

In its seven-page order, the trial court continued Delaney's "unsupervised conditional release" based on its conclusion that she "will require outpatient treatment in order to avoid predictable decompensation and the need to return to inpatient treatment." It ordered her to "continue to abide by the latest treatment plan, including all therapy sessions. . . ." A failure to abide by its order would result in the involuntary inpatient commitment of Delaney for a 30-day evaluation. Although it continued her conditional release, the trial court did not impose a time period for her

4

conditional release. It also failed to address whether Delaney had successfully completed her conditional release program.

1. Delaney contends that the trial court erred by denying her petition because she successfully completed all of the requirements of her conditional release plan. She also points out that the trial court did not rule on whether she successfully completed the requirements of her conditional release plan. Delaney relies upon OCGA § 17-7-131 (e) (5) (B), which provides, in part: "If the defendant successfully completes all requirements during this period of conditional release, the court shall discharge the individual from commitment at the end of that period." The State, on the other hand, asserts that the trial court was authorized to continue her conditional release if she continued to meet the criteria for outpatient involuntary treatment. Neither party correctly interprets the conditional release statute or invokes *Sikes v. State*, 268 Ga. 19 (485 SE2d 206) (1997), the Supreme Court of Georgia's seminal decision regarding conditional release.

In *Sikes*, the Supreme Court of Georgia addressed the options available to a trial court following a defendant's conditional release under OCGA § 17-7-131 (e) (5). 268 Ga. 19. The section of the statute governing conditional release provides:

5

(A) If a defendant appears to meet the criteria for outpatient involuntary treatment as defined in Part 3 of Article 3 of Chapter 3 of Title 37, which shall be the criteria for release on a trial basis in the community in preparation for a full release, the court may order a period of conditional release subject to certain conditions set by the court. The court is authorized to appoint an appropriate community service provider to work in conjunction with the Department of Behavioral Health and Developmental Disabilities to monitor the defendant's compliance with these conditions and to make regular reports to the court.

(B) If the defendant successfully completes all requirements during this period of conditional release, the court shall discharge the individual from commitment at the end of that period. Such individuals may be referred for community mental health, developmental disabilities, or substance abuse services as appropriate. The court may require the individual to participate in outpatient treatment or any other services or programs authorized by Chapter 3, 4, or 7 of Title 37.

(C) If the defendant does not successfully complete any or all requirements of the conditional release period, the court may:

  (i) Revoke the period of conditional release and return the defendant to a state hospital for inpatient services; or

(ii) Impose additional or revise existing conditions on the defendant as appropriate and continue the period of conditional release.

After examining this Code provision, the Supreme Court of Georgia concluded that "the word 'commitment' in the first sentence of subsection (e) (5) (B) . . . refer[s] to orders requiring involuntary inpatient treatment." 268 Ga. at 22 (3). Its "interpretation reconciles the first, second, and third sentences of [OCGA] § 17-7-131 (e) (5) (B) and gives 'sensible and intelligent effect' to each." (Citation omitted.) Id. It further explained:

Before a defendant is placed on a conditional release program, he has been involuntarily confined to an institution. Thus, the conditional release operates to release the defendant from his institutional confinement and place him back in the community on a trial basis. As was stated in [the defendant's] petition for conditional release, a conditional release appears to serve the purpose of a release in the community on a trial basis to create a history by which the trial court and the mental health professionals can determine whether the defendant can live safely in the community and comply with a court-ordered treatment plan. Before permitting a conditional release, a trial court does not have to determine conclusively whether a defendant meets the requirements for involuntary outpatient treatment, but only whether he appears to meet those requirements. If he does, the trial court has the flexibility to release the defendant in the community on a conditional

7

basis. Significantly, however, during the period of conditional release, the defendant is still subject to the order of involuntary hospitalization, and may, if he does not comply with the terms of the conditional release, be involuntarily hospitalized pursuant to § 17-7-131 (e) (5) (C) (ii). Thus, if a defendant successfully completes his conditional release from his institutional confinement, the first sentence of § 17-7-131 (e) (5) (B) serves to unconditionally release him from the court order mandating his involuntary hospitalization.

Interpreting "commitment" in the foregoing way gives meaning to both the first and third sentences of § 17-7-131 (e) (5) (B), resolves any conflict between the two, and makes them consistent and harmonious. Under this interpretation, if a defendant successfully completes his conditional release plan, the trial court must discharge him "from commitment," that is, from the order requiring his hospitalization. In contrast with [the defendant's] interpretation of the first sentence of § 17-7-131 (e) (5) (B), this interpretation permits the third sentence of that Code section to be given its plain meaning without creating a conflict with the first sentence. Under the plain meaning of the third sentence, the trial court may require the defendant to participate in outpatient treatment under Chapter 3 of Title 37. We emphasize, however, that the trial court may do so only if the defendant meets the requirements for outpatient treatment.

(Citations and footnote omitted.) Id. at 23-24 (4). Finally, the Supreme Court noted that

> instead of petitioning for a conditional release from the hospitalization order under § 17-7-131 (e) (5) (A), a defendant always has the option to petition for his outright discharge from the order of involuntary hospitalization pursuant to the terms of § 17-7-131 (f). If the defendant carries his burden to show that he does not meet the requirements for involuntary inpatient treatment, the trial court must discharge him from the order of hospitalization.

Id. at 24 (4), n.14.

In *Sikes*, "the trial court's order [did] not reveal whether the trial court found that [the defendant] had successfully completed his conditional release plan." 268 Ga. at 21 (1). The Supreme Court of Georgia therefore remanded the case back to the trial court to make that finding with the following guidance:

> if the trial court on remand determines that [the defendant] successfully completed his conditional release, the trial court must discharge [the defendant] from the order requiring his hospitalization. The trial court may, however, order [the defendant] to participate in involuntary outpatient treatment if the court determines that [the defendant] meets the requirements for such treatment. If the court determines that [the defendant] did not successfully complete his conditional release program, the court may take either of the actions authorized by § 17-7-131 (e) (5) (C) (i) or (ii).

Id. at 26 (6). As we are likewise confronted with an order that fails to specify whether a defendant successfully completed the requirements of conditional release, we vacate the trial court's order and remand this case to the trial court to make the same determinations outlined in *Sikes*. We further instruct the trial court to determine on the record whether a hearing has already been held in this case, and if not, appropriately rule on the request for a hearing in Delaney's petition.

2. Based on our holding in Division 1, Delaney's remaining enumerations of error are rendered moot.

*Judgment vacated and case remanded with direction. Barnes, P. J., and Hodges, J., concur.*