**FIRST DIVISION
ELLINGTON, C. J.,
PHIPPS, P. J., and DILLARD, J.**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/**

**October 12, 2012**

# In the Court of Appeals of Georgia

A12A0862. MCALISTER v. ABAM-SAMSON et al.

DILLARD, Judge.

David McAlister appeals the trial court's dismissal of his appeal related to an order to pay an attorney's lien to John C. Dabney Jr. for his representation of McAlister in a personal-injury action against Edith Abam-Samson.[1] McAlister argues that the trial court (1) lacked statutory authority to dismiss the appeal for a delay in transmitting the record appendix and (2) erred in dismissing the appeal when the delay was not unreasonable, inexcusable, or caused by him. For the reasons set forth *infra*, we affirm.

---

[1] The underlying facts are irrelevant to the issues before us, and therefore are not recounted in this opinion.

The record reflects that McAlister filed a notice of appeal in the underlying case on February 17, 2011, which directed that a "[t]ranscript of evidence and proceedings will be filed for inclusion in the record on appeal, and the parties will undertake the responsibility of filing their own record." On August 5, 2011, Dabney—as an intervenor in the McAlister/Abam-Samson case—filed a motion to dismiss McAlister's appeal due to a failure to file the record appendix.

At a hearing on the matter, McAlister's counsel testified that he spoke to the clerk's office in the State Court of Forsyth County; that the clerk advised that the office would "send everything to the Court of Appeals"; that he thereafter received and made payment on a bill from the clerk's office "for preparing [the] transcript and everything"; and that he was then "under the assumption that when [the clerk] said we'll send everything over to the Court of Appeals, that everything had been sent to the Court of Appeals . . . ." McAlister's attorney thus attributed the delay in sending the record appendix to a miscommunication with the clerk's office, which had left him "under the impression that everything had been sent when, in reality, only the transcript had been sent."

Thereafter, the trial court granted Dabney's motion to dismiss under OCGA § 5-6-48 (c), finding that the delay of 55 days was unreasonable, caused by McAlister, and inexcusable. This appeal by McAlister follows.

At the outset, we note that a trial court's ruling on whether an appeal is subject to dismissal will be reversed only for an abuse of discretion.[2] And OCGA § 5-6-48 (c) requires the trial court to "determine the length of the delay, the reasons for the delay, whether the appealing party caused the delay, and whether the delay was inexcusable before exercising its discretion in deciding whether to dismiss the appeal."[3] With these guiding principles in mind, we turn now to McAlister's enumerations of error.

1. McAlister first argues that the trial court lacked authority under OCGA § 5-6-48 (c) to dismiss the appeal for failure to transmit the record appendix. We disagree.

---

[2] *See Grant v. Kooby*, 310 Ga. App. 483, 485 (713 SE2d 685) (2011).

[3] *Id.* (emphasis and punctuation omitted).

Prior to December 17, 2011,[4] this Court accepted for consideration "any record or substitute therefor which the Supreme Court of Georgia accepts under its rules."[5] And Rule 67 of the Supreme Court of Georgia provides for the submission of a record appendix by the parties to an appeal,[6] which is to be transmitted "within 5 days after the date of filing of the transcript of evidence and proceedings by the appellant or appellee" or, when no transcript of evidence and proceedings is sent, the record appendix must be transmitted "within 30 days after the date of filing of the notice of appeal."[7] Although it does not reference the record appendix, which is a creation of our Supreme Court and not that of the General Assembly, OCGA § 5-6-48 (c) provides that after notice and opportunity for hearing, a trial court may

---

[4] Ga. Ct. Order 12-0007, "Termination of Record Appendix Rule in the Court of Appeals of Georgia" (effective Dec. 17, 2011) (amending Court of Appeals Rule 17 so as to no longer permit the filing of a record appendix with the Court of Appeals).

[5] Ct. App. R. 17 (prior to Dec. 17, 2011).

[6] Sup. Ct. R. 67 (2). *See generally* CHRISTOPHER J. MCFADDEN, GEORGIA APPELLATE PRACTICE WITH FORMS § 18:4 (2011) (discussing the adoption and requirements of the Georgia appellate courts' record appendix rule and instructing that "appellants should be at pains to exercise a high level of diligence" in complying with the rules).

[7] Sup. Ct. R. 67 (4).

order that the appeal be dismissed [when] there has been an unreasonable delay in the filing of the transcript and it is shown that the delay was inexcusable and was caused by such party. In like manner, the trial court may order the appeal dismissed [when] there has been an unreasonable delay in the transmission of the record to the appellate court, and it is seen that the delay was inexcusable and was caused by the failure of a party to pay costs in the trial court or file an affidavit of indigence . . . .[8]

McAlister argues that the trial court erred in applying OCGA § 5-6-48 (c) to dismiss his appeal because that code section does not contemplate a failure to transmit the record appendix and because he paid costs as billed by the clerk of court. We find this argument unavailing.

The record appendix is a judicially sanctioned (at the highest level) method of transmitting the documents relevant and necessary to an appeal. Our Supreme Court adopted this alternative means of submitting the appellate record on June 2, 2010, by amending Supreme Court of Georgia Rules 67 and 69;[9] and, as noted *supra*, this Court—prior to December 17, 2011—accepted for consideration "any record or

---

[8] OCGA § 5-6-48 (c).

[9] Ga. Ct. Order 10-0009, "Amendment to Rules of the Supreme Court of Georgia" (effective June 2, 2010).

substitute therefor which the Supreme Court of Georgia accepts under its rules."[10] The question at the heart of this appeal, then, is whether the Supreme Court's rules authorizing the record appendix, and the Court of Appeals rule incorporating same, can be reconciled with the dictates of OCGA § 5-6-48 (c). We conclude that they can be.

While it is certainly true that OCGA §§ 5-6-43 and 5-6-48 (c) make no mention of a record appendix, and that there is nothing in the text of these statutory subsections evincing an intent by the General Assembly to authorize litigants to transmit some or all of the documents relevant or necessary to an appeal, this does not necessarily end our inquiry. This is because the prior version of Court of Appeals Rule 17 in place at the time McAlister filed his notice of appeal explicitly authorized him—by way of incorporating Supreme Court Rules 67 and 69—to file a record appendix as an alternative means of transmitting the appellate record; and appellate-court rules have the force of law unless they are in conflict with federal or state law.[11]

---

[10] Ct. App. R. 17 (prior to Dec. 17, 2011).

[11] *See* OCGA § 15-1-5 ("The rules of the respective courts, legally adopted and not in conflict with the Constitution of the United States or of this state, or the laws thereof, are binding and must be observed."); *see also* OCGA 15-1-3 (6) ("Every court has power . . . [t]o amend and control its *processes* and orders, so as to make them conformable to law and justice . . . ." (emphasis supplied)).

And here, we see no conflict whatsoever between the statutorily prescribed method of transmitting the appellate record and the alternative means authorized by our Supreme Court. Indeed, the General Assembly makes clear in OCGA § 5-6-30 that "[i]t is the intention of this article to provide *a* procedure for taking cases to the

Supreme Court and the Court of Appeals . . . ."[12]—not the exclusive procedure,[13] but

*a* procedure for bringing an appeal before this Court and our Supreme Court.

But even if we were to assume *arguendo* that there was indeed a conflict

between OCGA §§ 5-6-43, 5-6-48 (c), and Supreme Court Rules 67 and 69 (and thus

the prior version of Court of Appeals Rule 17), this Court—as the *intermediate*

---

[12] (Emphasis supplied).

[13] We reject any applicability, in this context, of the negative-implication canon of construction—*expressio unius est exclusio alterius*, "the expression of one thing implies the exclusion of the other." *See Couch v. Red Roof Inns, Inc.*, 291 Ga. 359, 363 (729 SE2d 378) (2012) (describing the nature of the negative-implication canon). As Justice Anontin Scalia and Bryan Garner emphasize in their magisterial book, *Reading Law: The Interpretation of Legal Texts*, the negative-implication canon "must be applied with great caution, since its application depends so much on context." ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 107 (2012). And in the case *sub judice*, there is nothing about the relevant statutory context remotely suggesting that the appellate courts of this state are without authority to prescribe alternative methods of transmitting the appellate record. Indeed, when OCGA § 5-6-43 is construed *in pari materia* with other statutory and constitutional provisions, such an interpretation becomes entirely untenable. *See, e.g.,* GA. CONST., art. 6, § 1, ¶ 1 ("The judicial power of the state shall be vested exclusively in the following classes of courts: . . . Court of Appeals, and Supreme Court."); GA. CONST., art. 6, § 1, ¶ 4 ("Each court may exercise such powers as necessary in aid of its jurisdiction or to protect or effectuate its judgments . . . ."); OCGA 15-1-3 (6) ("Every court has power . . . [t]o amend and control its *processes* and orders, so as to make them conformable to law and justice . . . ." (emphasis supplied)); *see also Johnson v. State*, 177 Ga. 881, 881 (1) (a) (171 SE 699) (1933) (holding that every court possesses inherent powers not specifically granted that are necessary to the court's proper functioning).

8

appellate court in Georgia—is entirely lacking in authority to pass judgment on either the legality or constitutionality of our Supreme Court's rules.[14] Suffice it to say, as an inferior appellate court we properly assume that our Supreme Court's rules are both legal and constitutional.

In sum, we conclude that the trial court did not err in reading the rules of our Court—and thus, by incorporation, Supreme Court of Georgia Rules 67 and 69—*in pari materia* with OCGA § 5-6-48 (c), and applying that particular code section to a situation involving the judicially sanctioned record appendix,[15] which is merely an

---

[14] *Cf. Clark v. Hunstein*, Case No. S12O1700, 2012 WL 4475722, at *3 (2) (Ga. October 1, 2012) (noting the "universally accepted principle . . . that in hierarchical judicial systems, lower courts have no jurisdiction to issue orders to higher courts or to their members in their official capacities, whether by mandamus or otherwise").

[15] *See Spectra, Inc. v. Wilson*, Case No. A12A0773, 2012 WL 2990761, at *3 (1) (Ga. App. July 16, 2012) ("[A]ll statutes relating to the same subject-matter, briefly called statutes in pari materia, are construed together, and harmonized wherever possible, so as to ascertain the legislative intendment and give effect thereto."); *see also Ex parte State ex rel. Daw*, 786 So.2d 1134, 1136 (Ala. 2000) ("[R]ules and statutes relating to the same subject matter must be read *in pari materia,* thus allowing for legal harmony [when] possible."). *See generally* NORMAN J. SINGER & J.D. SHAMBIE SINGER, SUTHERLAND STATUTES AND STATUTORY CONSTRUCTION § 51:3 (7th ed.) ("Statutes are *in pari materia*—pertain to the same subject matter—when they relate to the same person or thing, to the same class of persons or things, or have the same purpose or object." (footnote omitted)).

9

alternative method by which the parties were permitted to transmit the documents relevant and necessary to the appeal.[16]

It is true that ordinarily, once the notice of appeal has been filed, "the obligation for the preparation of the record rests with the clerk" and the appellant has the responsibility of timely paying costs and "filing the requisite transcript or portions thereof within 30 days."[17] But here, McAlister took upon himself the duty otherwise delegated to the clerk of court (*i.e.*, transmission of the record),[18] and he therefore cannot now complain about his appeal being dismissed pursuant to OCGA § 5-6-48 (c) when he expressly elected to file a record appendix in his notice of appeal. Thus, while the Appellate Practice Act is to "be liberally construed so as to bring about a

---

[16] *See* Sup. Ct. R. 67 (2); Ct. App. R. 17 (prior to Dec. 17, 2011).

[17] *Holy Fellowship Church of God in Christ v. First Cmty. Bank of Henry County*, 242 Ga. App. 400, 402 (530 SE2d 24) (2000) (punctuation omitted); *see also Hill Aircraft & Leasing Corp. v. Planes, Inc.*, 169 Ga. App. 161, 165 (1) (312 SE2d 119) (1983) ("[W]hen the record or transcript does not fully disclose the case for consideration, it is the duty of the appellant to have the record completed in the trial court for consideration of same by the appellate court.").

[18] *See Holy Fellowship Church of God in Christ*, 242 Ga. App. at 402; Ct. App. R. 17 ("The clerk of the trial court shall certify and transmit to the Clerk of this court . . . copies of all records as required within the time prescribed by statute. . . . Transmittal shall be made by the clerk or deputy personally or by first class United States mail, express mail, or commercial courier or delivery service, charges prepaid.").

10

decision on the merits of every case appealed and to avoid dismissal of any case or refusal to consider any points raised therein,"[19] this forgiving canon of statutory construction has its limits. Indeed, were we to hold that OCGA § 5-6-48 (c) does not encompass a party's decision to take on the responsibility of transmitting a record appendix, an appeal for a delay in filing same could *never* be dismissed—a result which is patently absurd.[20] Thus, we conclude that the trial court did not err in applying OCGA § 5-6-48 (c) to resolve this issue.

2. McAlister also argues that even if OCGA § 5-6-48 (c) applies to a delay in transmitting the record appendix, the delay here was not unreasonable, was not inexcusable, and was not caused by McAlister. Once again, we disagree.

As explained *supra*, OCGA § 5-6-48 (c) requires the trial court to "determine the length of the delay, the reasons for the delay, whether the appealing party caused the delay, and whether the delay was inexcusable before exercising its discretion in

---

[19] OCGA § 5-6-30; *see also Holy Fellowship Church of God in Christ*, 242 Ga. App. at 402 ("As a general rule, this state's appellate courts should reach the merits of appeals whenever possible. The policy is to avoid the dismissal of an appeal and to reach the merits of a case whenever it is reasonable to do so." (citations omitted)).

[20] *State v. Mussman,* 289 Ga. 586, 589 (1) (713 SE2d 822) (2011) (holding that courts "may construe statutes [and the like] to avoid absurd results" (punctuation omitted)).

11

deciding whether to dismiss the appeal."[21] And the trial court in the case *sub judice*

found that the delay in this case equaled 55 days, was caused by McAlister, and was

inexcusable.

We have previously held that "[a] delay of more than 30 days in filing a

transcript . . . is prima facie unreasonable and inexcusable, but this presumption is

subject to rebuttal if the party comes forward with evidence to show that the delay

was neither unreasonable nor inexcusable."[22] Here, the notice of appeal was filed

February 17, 2011; the clerk of court transmitted the transcript on June 2, 2011;[23] and

the motion to dismiss was filed August 5, 2011, at which point no record appendix

had been transmitted because McAlister was "under the assumption" that the clerk

of court had transmitted the record. Thus, at that point, transmission of the record

appendix had been delayed by approximately two months.[24]

---

[21] *Grant*, 310 Ga. App. at 485.

[22] *Pistacchio v. Frasso*, 314 Ga. App. 119, 121 (723 SE2d 322) (2012) (punctuation omitted).

[23] Nothing in the record before us indicates exactly when McAlister filed the transcript of evidence and proceedings, but it is undisputed by the parties that the clerk of court sent the Appeal Index on June 2, 2011.

[24] *See* Sup. Ct. R. 67 (providing that record appendix is to be transmitted "within 5 days after the date of filing of the transcript of evidence and proceedings

McAlister argues that this delay was not unreasonable because the delay did not prevent the case from being docketed for the September term of this court. A delay is unreasonable when it may affect an appeal by (1) prejudicing a party through a change in conditions or other inequity or (2) "causing the appeal to be stale, such as, by delaying just disposition of the case, by preventing placement of the case on the earliest possible appellate court calendar, or by delaying the docketing of the appeal and hearing of the case by an appellate court."[25] This Court's docket for the January, April, and September terms closes "at noon on the 15th day of December, April and August, respectively."[26] Thus, had McAlister transmitted the record appendix between August 5 and August 15, 2011, the case would have been docketed in the same term of court—the September term—as would have occurred had the transmission been timely.[27] Nevertheless, McAlister has asserted that he was not even aware that the clerk of court had not transmitted the record until the motion to dismiss was filed, and the court did not hear argument on the motion to dismiss until October

by the appellant or appellee").

[25] *Pistacchio*, 314 Ga. App. at 121-22 (punctuation omitted).

[26] Ct. App. R. 12.

[27] *See id.*

13

10, 2011, well after the closing of the docket for our September term.[28] It is conjecture, then, to speculate that either (1) the clerk of court would have transmitted the record to this Court between August 5 and August 15 or that (2) McAlister's error would have been discovered in this period without the motion to dismiss.[29] Thus, McAlister has "failed to come forward with evidence to rebut the presumption that the delay was unreasonable."[30]

McAlister has also failed to show that the delay was not inexcusable or that it was not his fault, attributing it to a "miscommunication" with the clerk of court. But the record reflects that McAlister elected to take responsibility for transmitting the record by stating in the notice of appeal that he would file a record appendix (and never amending his notice of appeal to provide that the clerk would be responsible

---

[28] *See id.*

[29] *See Pistacchio*, 314 Ga. App. at 122 ("The appellants . . . conclude that with or without the delay, the case would have been docketed in the September term. But this conclusion is speculative. [Appellee] filed a motion to dismiss requiring resolution by the trial court prior to appellants' filing of the transcript. So whether the trial court clerk could have transmitted the record, transcript and notice of appeal to this court within three days is conjecture.").

[30] *Id.*

14

for transmission of the record),[31] but he failed in that responsibility by relying solely on an assumption that the clerk of court would transmit the record with the transcript after a vague conversation, and McAlister never made an effort to confirm same. Thus, the trial court did not abuse its discretion by dismissing the appeal.[32]

Accordingly, for all the foregoing reasons, we affirm the trial court's dismissal of McAlister's appeal.

*Judgment affirmed. Ellington, C. J., and Phipps, P. J., concur.*

---

[31] *See id.* at 123 ("[A]ppellants are not accountable for delays caused by clerks of court or court reporters after the transcript has been ordered properly; appellants are held accountable only for delays that they cause." (punctuation omitted)).

[32] *See Langdale Co. v. Langdale*, 295 Ga. App. 372, 374-75 (671 SE2d 863) (2008) (dismissal upheld when delay attributed to a miscommunication but attorney did not confirm that costs had been paid within the time allowed by statute); *Park Regency Partners, L.P. v. Gruber*, 271 Ga. App. 66, 70-71 (1) (608 SE2d 667) (2004) (dismissal upheld when delay attributed to malfunctioning mail system at law firm); *Leonard v. Ognio*, 201 Ga. App. 260, 261-62 (410 SE2d 814) (1991) (reversing trial court's denial of dismissal when delay attributed to interoffice miscommunication); *McDonald v. Garden Servs., Inc.*, 163 Ga. App. 851, 851-53 (295 SE2d 551) (1982) (dismissal upheld when delay attributed to law firm's clerical error); *see also PJ Servs., Inc. v. Equity Techs. Assocs., Inc.*, 295 Ga. App. 214, 216 (671 SE2d 264) (2008) ("Because the record supports the trial court's conclusion that the delay was unreasonable, inexcusable, and caused by [the appellant], we find no abuse of discretion in the trial court's dismissal of the appeal.").