**THIRD DIVISION**
**DILLARD, P. J.,**
**GOBEIL and HODGES, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received*** **in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**February 18, 2020**

# In the Court of Appeals of Georgia

A19A2398. RHONDA NEWTON, Court Appointed Administrator of the Estate of RONNIE CANTRELL v. KAYE FREEMAN, Court Appointed Temporary Administrator of the Estate of MARGARET CANTRELL.

A20A0058. KAYE FREEMAN, Court Appointed Temporary Administrator of the Estate of MARGARET CANTRELL v. RHONDA NEWTON, Court Appointed Administrator of the Estate of RONNIE CANTRELL.

DILLARD, Presiding Judge.

In 2005, Kaye Freeman—as the guardian and ultimately administrator of her mother's estate—filed suit against her brother, Ronnie Cantrell, seeking cancellation of a deed conveying Margaret Cantrell's property and damages. The case was dismissed for want of prosecution in 2007, but reinstated three years later. Following a 2017 trial, in which Rhonda Newton represented her then-deceased brother Ronnie's estate, a jury returned a verdict in favor of Freeman and awarded her $2,541,000 in damages. In Case No. A19A2398, Newton contends that the trial court

erred in reinstating the case in 2010, admitting bad character evidence pertaining to non-parties during trial, and entering judgment on an award of damages that was not supported by evidence. And in Case No. A20A0058, Freeman contends that the trial court erred in denying her motion to dismiss Newton's appeal for failing to timely file the trial transcript. For the reasons discussed *infra*, we reverse the trial court's denial of Freeman's motion and, thus, dismiss Newton's appeal.

The record shows that on April 6, 1994, Ronnie Cantrell entered into an agreement with his parents—Margaret and Linzy Cantrell—to purchase 32.8 acres of land in Henry County for $100,000. The contract for the sale of the property included a stipulation that it would be rezoned prior to its actual conveyance. And following the execution of the sales contract, Ronnie immediately sought to have the land rezoned but was unable to do so until 2002. Thus, on June 5, 2002, Ronnie paid Margaret—his father Linzy had passed away in the interim—$99,000 in exchange for the property and recorded the deed with the Henry County clerk. The very next day, Ronnie sold the property, as well as an additional 34 acres he acquired from one of his mother's neighbors, for $1,156,000.00 to Lexington Park LLC, which planned to develop a subdivision on the land.

On February 11, 2005, Kaye Freeman—as the court-appointed guardian of Margaret, who was incapacitated due to dementia—filed suit against her brother and Lexington Park, seeking cancellation of the deed conveying her mother's property and damages for breach of fiduciary duty and fraud. Specifically, Freeman's complaint alleged that Ronnie took advantage of his mother's poor mental and physical health in convincing her to convey him the property so that he could in turn sell the property to Lexington Park for a large profit. Ronnie and Lexington Park filed answers and counterclaims, and discovery ensued. Thereafter, in January 2007, Lexington Park settled with Freeman, and the trial court dismissed that entity from the case.

On February 6, 2007, the superior court clerk's office issued a peremptory calendar order, in which it notified all attorneys with cases before the court, including Freeman and Ronnie Cantrell's respective counsel, that pending actions would be dismissed for want of prosecution if attorneys did not appear at the calendar call currently scheduled for April 18, 2007. But in that same order, the clerk also informed counsel that:

> In the alternative, the attorney for the respective parties may advise the office of the Clerk of the Superior Court in writing, not later than 4:00

o'clock P.M., Tuesday, April 17, 2007, as to the reason his action should not be dismissed for want of prosecution. If any attorney chooses to avail himself of this method of notification, it shall be unnecessary for him to appear at the peremptory calendar call on April 18, 2007.

Both counsel for Freeman and Ronnie Cantrell wrote the clerk prior to the April 17, 2007 deadline to request that the case be kept active. And records indicate that the clerk, in fact, received those requests. Nevertheless, on August 27, 2007, the trial court, for reasons not entirely clear, dismissed Freeman's case but not Ronnie Cantrell's counterclaims. Furthermore, that dismissal order was apparently not served on either party, and both parties continued as if the case were still active. On August 10, 2010, the clerk's office discovered that the case had been mistakenly dismissed and immediately filed an affidavit with the court explaining the error. Consequently, a few days later, the trial court issued an order reinstating the case on the ground that the earlier dismissal had been due to a scrivener's error.

In February 2017, the case proceeded to trial, with Rhonda Newton now the defendant in her capacity as the court-appointed administrator for the estate of Ronnie Cantrell, who had passed away several years earlier. During the trial, numerous witnesses testified regarding, *inter alia*, the property conveyance and Margaret's mental state at the time of that conveyance. At the conclusion of the trial, the jury

4

issued a verdict in favor of Freeman and awarded her $2,541,000 in compensatory damages. And the following day, February 22, 2017, the trial court entered a judgment for Freeman in that same amount.

On March 17, 2017, Newton filed a notice of appeal and a motion for extension of time to file the transcript of evidence and proceedings. The trial court granted the motion and set the new filing deadline for July 10, 2017. A few days before that deadline, Newton filed a second motion for extension of time to file the transcript. The trial court granted this motion as well and set a new filing deadline for September 15, 2017. Newton requested no additional extensions of time, and, in fact, her counsel received an electronic version of the transcript on August 30, 2017, and allegedly e-filed it with the superior court clerk less than a week later. But the superior court clerk apparently encountered difficulties e-filing the digital exhibits. As a result, the final transcript and all trial exhibits were not filed until December 12, 2018—nearly fifteen months after the last extension of time for filing that had been granted by the trial court. And during that period of time, Newton sought no additional extensions of time.

On April 11, 2019, Freeman filed a motion to dismiss Newton's appeal in the trial court, citing the nearly fifteen-month delay in filing the trial transcript beyond the second extension of time granted by the court. Newton filed a response, and the trial court conducted a hearing on May 9, 2019. At the conclusion of the hearing, the trial court denied Freeman's motion and issued an order to that effect. Freeman then filed a notice of appeal as to that decision, and those two appeals are now before us.

1. We first address Freeman's appeal in Case No. A20A0058, in which she contends that the trial court erred in denying her motion to dismiss Newton's appeal in Case No. A19A2398. We agree.

OCGA § 5-6-48 (c) provides that

[n]o appeal shall be dismissed by the appellate court nor consideration of any error therein refused because of failure of any party to cause the transcript of evidence and proceedings to be filed within the time allowed by law or order of court; but the trial court may, after notice and opportunity for hearing, order that the appeal be dismissed where there has been an unreasonable delay in the filing of the transcript and it is shown that the delay was inexcusable and was caused by such party.

Additionally, under OCGA § 5-6-42, when "there is a transcript of evidence and proceedings to be included in the record on appeal, the appellant shall cause the transcript to be prepared and filed . . . within 30 days after filing of the notice of

6

appeal . . . ."[1] Importantly, in considering a motion to dismiss on grounds of a failure to timely file the transcript, the trial court must determine "the length of the delay, the reasons for the delay, whether the appealing party caused the delay, and whether the delay was inexcusable, and then exercise discretion in deciding whether to dismiss the appeal."[2] And while trial courts have wide discretion when ruling on a motion to dismiss an appeal based on a failure to timely file a transcript, that discretion is "not unlimited."[3]

Here, Newton filed her notice of appeal of the jury's verdict and trial court's judgment on March 17, 2017, and on that same date, also submitted a motion for extension of time to file the transcript of evidence and proceedings. A few days before that deadline, Newton filed a second motion for extension of time to file the transcript and was granted a new filing deadline of September 15, 2017. Thereafter,

---

[1] OCGA § 5-6-42.

[2] *State v. Brienza*, 350 Ga. App. 672, 674-75 (829 SE2d 894) (2019) (punctuation omitted); *accord Propst v. Morgan*, 288 Ga. 862, 863 (708 SE2d 291) (2011); *Gordon v. Dennis*, 341 Ga. App. 795, 797 (1) (802 SE2d 77) (2017).

[3] *Coptic Constr. Co., Inc. v. Rolle*, 279 Ga. App. 454, 456 (631 SE2d 475) (2006); *see Propst*, 288 Ga. at 863 ("The trial court's ruling [on a motion to dismiss an appeal] will be reversed on appeal only for abuse of discretion."); *Brienza*, 350 Ga. App. at 675 (noting that this Court "will only reverse a trial court's ruling on such a motion if the court abused its discretion.")

Newton requested no additional extensions of time. And although her counsel received an electronic version of the transcript on August 30, 2017, and allegedly e-filed it with the superior court clerk less than a week later, the final transcript and all trial exhibits were not filed until nearly fifteen months after the last extension of time for filing had been granted by the trial court. Importantly, during those fifteen months, Newton sought no additional extensions of time and made no effort to ensure that the trial transcript and exhibits were filed.

In its brief order denying Freeman's motion to dismiss the appeal, the trial court acknowledged that there was a delay in filing the transcript and the exhibits but did not attribute the delay to Newton—seemingly in light of the clerk's difficulty in filing the exhibits. In considering the trial court's decision, we note that our Supreme Court has previously held that "a delay in excess of 30 days in filing a transcript after a notice of appeal is filed is prima facie unreasonable and inexcusable, but this presumption is subject to rebuttal if the party comes forward with evidence to show

that the delay was neither unreasonable nor inexcusable."[4] Furthermore, this Court

will also consider

> *any* delay in transmitting the appellate record unreasonable where it may
> affect an appeal by: (a) directly prejudicing the position of a party by
> allowing an intermediate change of conditions or otherwise resulting in
> inequity; or (b) causing the appeal to be stale, such as, by delaying just
> disposition of the case, by preventing placement of the case on the
> earliest possible appellate court calendar, or by delaying the docketing
> of the appeal and hearing of the case by an appellate court.[5]

In fact, we have repeatedly recognized that justice delayed for even one day is "justice

denied to the litigant who was successful in the lower court and who is entitled to his

judgment unless the case is properly reversed."[6]

Nevertheless, Newton argues that the superior court clerk's technical inability

to file the trial exhibits—rather than her own actions or inactions—was the sole cause

---

[4] *HTTP Hypothermia Therapy v. Kimberly-Clark Corp.*, 330 Ga. App. 857, 859-60 (1) (768 SE2d 542) (2015) (punctuation omitted); *accord Kelly v. Dawson Cty.*, 282 Ga. 189, 189 (646 SE2d 53) (2007); *Adams v. Hebert*, 279 Ga. App. 158, 159 (630 SE2d 652) (2006).

[5] *HTTP Hypothermia Therapy*, 330 Ga. App. at 860 (1) (punctuation omitted); *accord Mercer v. Munn*, 321 Ga. App. 723, 726 (1) (742 SE2d 747) (2013); *Pistacchio v. Frasso*, 314 Ga. App. 119, 121-22 (723 SE2d 322) (2012).

[6] *HTTP Hypothermia Therapy*, 330 Ga. App. at 860 (1); *accord Ashley v. JP Morgan Chase Bank, N.A.*, 327 Ga. App. 232, 237 (1) (758 SE2d 135) (2014).

of the delay in filing the transcript. But Newton failed to even contact the clerk to inquire regarding the status of the trial transcript for nearly fifteen months, much less seek another extension of time in which to file it. And despite her attempt to fault the superior court clerk for the delay, it was Newton's duty, as the appealing party, to monitor the progress toward timely filing the transcript and exhibits.[7]

Moreover, in its order denying Freeman's motion to dismiss the appeal, the trial court did not consider whether Freeman suffered prejudice as a result of the fifteen-month delay, but "a delay is unreasonable if it affects an appeal either by directly prejudicing the position of a party by allowing an intermediate change of conditions or otherwise resulting in inequity, *or* by causing the appeal to become stale, for

---

[7] *See Mercer*, 321 Ga. App. at 726 (1) ("[T]he duty to order the transcript and to monitor timely the progress of the reporter's office in transcript preparation is vested upon the appropriate appealing party." (punctuation omitted)); *Coptic Const. Co.*, 279 Ga. App. at 456 (same); *see also Jackson v. Beech Aircraft Corp.*, 217 Ga. App. 498, 502-03 (2) (458 SE2d 377) (1995) ("At no time did the court reporter have a duty to inform any party to the trial that the transcript had not been officially ordered or that it was not being prepared. The statutory duty to file timely a transcript does not rest with the court reporter; rather the duty to order the transcript and to monitor timely the progress of the reporter's office in transcript preparation is vested upon the appropriate appealing party . . . . It would create an unacceptable and impractical burden on the court reporter's office to require them to contact attorneys or parties and report on the status of all ordered transcripts or to contact attorneys inquiring whether a transcript was being ordered; we decline to take this opportunity to create such an oppressive administrative requirement.").

instance by delaying docketing and hearing in this Court."[8] And here, the initial

docketing of this appeal was significantly delayed when Newton's notice of appeal

was filed on March 17, 2017, but the case was not docketed with this Court until July

5, 2019—over two years later.[9] Given these circumstances, the trial court erred in

---

[8] *Brienza*, 350 Ga. App. at 679 (punctuation omitted); *accord Postell v. Alfa Ins. Corp.*, 332 Ga. App. 22, 25 (2) (a) (i) (772 SE2d 793) (2015); *Ashley*, 327 Ga. App. at 235 (1); *Bush v. Reed*, 311 Ga. App. 328, 331-32 (a) (715 SE2d 747) (2011); *Adams*, 279 Ga. App. at 159.

[9] *See Brienza*, 350 Ga. App. at 679 (holding that five-month delay in filing transcript was unreasonable and delayed docketing in this Court); *Postell*, 332 Ga. App. at 26 (2) (a) (i) (holding that four-and-a-half-month delay was unreasonable and delayed docketing in this Court); *Ashley*, 327 Ga. App. at 235-37 (1) (holding that eight-month delay caused appeal to be docketed at least one term later than it should have been docketed); *McAlister v. Abam-Samson*, 318 Ga. App. 1, 6-7 (2) (733 SE2d 58) (2012) (concluding that delay resulted in docketing for a later term of court); *Pistacchio*, 314 Ga. App. at 122 ("The [three-month] delay here discernibly delayed docketing of the record in the appellate court and prevented an appellate decision on the merits at the earliest possible date."); *Bush*, 311 Ga. App. at 332 (a) (holding that ten-month delay "prevented the case from being docketed and heard in the earliest possible appellate term of court"); *Morrell v. W. Servs., LLC*, 291 Ga. App. 369, 374 (2) (662 SE2d 215) (2008) (holding that 51-day delay caused delay of appeal from one term to another); *Adams*, 279 Ga. App. at 159 (concluding that 150-day delay resulted in delayed docketing from one term to another).

11

denying Freeman's motion to dismiss Newton's appeal.[10] Accordingly, we reverse the trial court's judgment in Case No. A20A0058.

2. In light of our holding in Division 1, *supra*, we dismiss Newton's appeal in Case No. A19A2398.

*Judgment reversed in Case No. A20A0058. Appeal dismissed in Case No. A19A2398. Gobeil and Hodges, JJ., concur.*

---

[10] *See Brienza*, 350 Ga. App. at 679-80 (reversing trial court's denial of appellant's motion to dismiss State's appeal in light of the five-month delay in filing transcript and the fact that State failed to show that such delay was not unreasonable or inexcusable); *Mercer*, 321 Ga. App. at 726-27 (1) (reversing trial court's denial of psychiatrist's motion to dismiss patient's appeal given that patient failed to present evidence to rebut the presumption of unreasonableness arising from the delay of more than a year, and delay discernibly delayed docketing of the record in the appellate court and prevented an appellate decision on the merits at the earliest possible date); *Morrell*, 291 Ga. App. at 374-75 (2) (reversing trial court's refusal to dismiss appellee's appeal because of unreasonable, inexcusable delay in paying costs and filing a transcript); *Coptic Constr. Co., Inc.*, 279 Ga. App. at 456-57 (reversing trial court's order denying homeowner's motion to dismiss contractor's appeal given latter's inexcusable delay of more than nine months in filing the transcript, which delayed just disposition of case).