**THIRD DIVISION**
**DOYLE, P. J.,**
**REESE and BROWN, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**October 28, 2021**

# In the Court of Appeals of Georgia

A21A0832. JOHNSON & JOHNSON et al. v. SHIVER.

A21A0935. JOHNSON & JOHNSON et al. v. SHRODES et al.

A21A1038. JOHNSON & JOHNSON et al. v. AMIN et al.

A21A1294. JOHNSON & JOHNSON et al. v. ADAMS et al.

REESE, Judge.

Johnson & Johnson and Johnson & Johnson Consumer Companies Inc. (collectively, "J&J") appeal from orders denying their motions to dismiss the complaints filed against them in four cases in various state and superior courts. In each case, J&J alleged that the plaintiffs failed to meet the prima facie impairment standard under Georgia's Asbestos Claims Act[1] (the "Act"). Because the plain

---

[1] See OCGA § 51-14-1 et seq.

language of the Act required the trial court in each of these cases to dismiss the complaint without prejudice, we reverse.

Each of the complaints in the four cases before us were brought by the executor of the estate of a decedent who had allegedly used Johnson's Baby Powder and Johnson & Johnson's Shower to Shower (collectively, "Talc Product") on a regular basis over a number of years during her lifetime. According to the complaints, as a result of the decedents' cumulative exposures to asbestos contained in the Talc Product, they developed terminal ovarian cancer. Attached to each of the complaints was a case-specific affidavit and medical report of Dr. Richard Kradin, which is discussed in more detail after a brief overview of the procedural history of each appeal at issue here.

*Case No. A21A0832*

According to the complaint in Case Number A21A0832, Irene Shiver used the Talc Product on a daily basis for 42 years of her life, beginning in 1972. Shiver was diagnosed in July 2016 with ovarian cancer. Her cause of death in June 2019 was listed as metastatic papillary serous carcinoma. Kirt Shiver, as executor of the estate, filed a tort complaint against J&J and others. The State Court of Dougherty County

2

denied J&J's motion to dismiss, and we granted J&J's application for interlocutory appeal.

*Case No. A21A0935*

The complaint in Case Number A21A0935 alleged that Catherine Shrodes used the Talc Product for 26 years, beginning in 1984, and that she was diagnosed with ovarian cancer in 2017. Shrodes died from complications of advanced ovarian carcinoma in July 2019. After the State Court of Cobb County denied J&J's motion to dismiss the complaint, we granted interlocutory review.

*Case No. A21A1038*

According to the complaint in Case Number A21A1038, Susie Amin used the Talc Product daily from 1978 until 2012. She was diagnosed in September 2013 with ovarian carcinoma and died from complications of ovarian cancer in June 2016. The Superior Court of Spalding County denied J&J's motion to dismiss the complaint, and we granted J&J's application for interlocutory appeal.

*Case No. A21A1294*

According to the complaint in Case Number A21A1294, Elizabeth Adams used the Talc Product from 1973 until 2017, when she was diagnosed with ovarian cancer. The cause of her death in September 2017 was listed as malignant neoplasm of the

left ovary. The State Court of Gwinnett County denied J&J's motion to dismiss, and we granted interlocutory review.

"The interpretation of a statute is a question of law, which is reviewed de novo on appeal. And when only a question of law is at issue, we owe no deference to the trial court's ruling[.]"[2] With these guiding principles in mind, we turn now to J&J's claim of error.

In each of the four appeals before us, J&J argues that the trial courts erred by not dismissing the complaints because the plaintiffs failed to proffer evidence that other potential causes were not the sole or most likely cause of the injury at issue.

Before we turn to construction of the relevant statutes, we begin with a history of the Act to place this dispute in context. In passing the Act, the General Assembly recognized that it was "proper . . . to support and protect the Georgia courts from the massive litigation expense and the crowding of trial dockets caused by asbestos . . . litigation[.]"[3] The General Assembly noted that diseases caused by asbestos often had

---

[2] *Catoosa County v. Rome News Media*, 349 Ga. App. 123, 126 (825 SE2d 507) (2019) (punctuation and footnote omitted).

[3] OCGA § 51-14-1 (8).

long latency periods,[4] and that concerns about statutes of limitations could prompt unimpaired claimants to bring suit to protect their ability to recover.[5] The General Assembly explicitly stated that the purpose of the Act was to give priority to claimants who could demonstrate actual physical harm or illness caused by asbestos and defer the rights of potential claimants who had not yet suffered physical impairment.[6]

To this end, the General Assembly required, inter alia, that any plaintiff filing an asbestos claim after May 1, 2007, include with the complaint "a medical report . . . setting forth the medical findings necessary to establish prima-facie evidence of physical impairment[.]"[7] The consequence for failure to satisfy this requirement is clear: "If the trial court determines that the plaintiff has failed to establish prima-facie evidence of physical impairment, it *shall* dismiss the plaintiff's complaint without prejudice."[8]

---

[4] OCGA § 51-14-1 (4).

[5] OCGA § 51-14-1 (7).

[6] OCGA § 51-14-1 (b).

[7] OCGA § 51-14-6 (2) (A).

[8] OCGA § 51-14-6 (2) (E) (emphasis supplied).

5

In the context of an asbestos claim alleging cancer other than mesothelioma[9] that accrued on or after May 1, 2007, "prima-facie evidence of physical impairment" means:

> that a board certified pulmonologist, board certified pathologist, board certified occupational medicine physician, or board certified oncologist has signed a medical report certifying to a reasonable degree of medical probability [1] that the exposed person has or had a cancer other than mesothelioma; [2] that the cancer is a primary cancer; [3] that exposure to asbestos was a substantial contributing factor to the diagnosed cancer; and [4] that other potential causes (such as smoking) were not the sole or most likely cause of the injury at issue[.][10]

As noted above, in each of the cases on appeal, the plaintiffs attached to the complaint an affidavit and case-specific medical report of Richard Kradin, M.D., who attested that he was, inter alia, a board-certified pulmonologist and pathologist. In each case, Kradin stated in Paragraph 7 of his affidavit that the decedent had been diagnosed with ovarian cancer, which was a primary cancer. Included with each

---

[9] If a claimant alleges mesothelioma caused by exposure to asbestos, no further prima-facie evidence of physical impairment is required. OCGA § 51-14-3 (17) (B) (i). The prima-facie evidence requirements for asbestos claims alleging nonmalignant injury are the most stringent of the three categories. See OCGA § 51-14-3 (17) (B) (iii).

[10] OCGA § 51-14-3 (17) (B) (ii).

6

affidavit was a medical report that indicated the materials Kradin had reviewed, that summarized the decedents' medical and exposure history, and that made ancillary findings such as the statistical probability of each decedent's exposure to asbestos in the Talc Product.

Kradin concluded in each affidavit that, "to a reasonable degree of medical probability that [the decedent's] cumulative exposure to [the Talc Product] contaminated with asbestos, was a substantial contributory factor in causing her ovarian carcinoma."

Kradin further opined that, based on the information and background he reviewed, "there would be no other environmental exposures that would be the sole or most likely cause of the ovarian carcinoma that caused her death." It is this language that J&J contends does not meet the requirements of the Act.

In interpreting the Act's prima-facie evidence of physical impairment requirement, "we apply the fundamental rules of statutory construction that require us to construe the statute according to its terms, to give words their plain and ordinary meaning, and to avoid a construction that makes some language mere surplusage."[11]

---

[11] *Lyman v. Cellchem Intl.*, 300 Ga. 475, 477 (796 SE2d 255) (2017) (citation and punctuation omitted).

"We cannot by construction add to, take from, or vary the meaning of unambiguous words in a statute."[12]

Under the plain language of the Act, the medical report must certify to a reasonable degree of medical probability, inter alia: "[3] that exposure to asbestos was a substantial contributing factor to the diagnosed cancer; *and* [4] that other potential causes (such as smoking) were not the sole or most likely cause of the injury at issue[.]"[13] While Kradin's affidavit tracked the statutory language of the first three prongs, with respect to the fourth prong, he concluded only that there were no other "environmental exposures" that were the sole or most likely cause. Kradin did not opine as to whether there were any other "potential causes."

The trial courts' application of OCGA § 51-14-3 (17) (B) (ii) in each of these cases renders the fourth requirement of the medical report mere surplusage. For example, in Case Numbers A21A1038 and A21A1294, the courts used identical language to find that "[Kradin's] conclusion that [the decedents'] exposure[s] to asbestos through [the Talc Product] were substantial contributory factors to causing

---

[12] *City of Albany v. GA HY Imports*, 348 Ga. App. 885, 891 (1) (825 SE2d 385) (2019) (citation and punctuation omitted).

[13] OCGA § 51-14-3 (17) (B) (ii) (emphasis supplied).

8

[their] ovarian cancer necessarily excludes the possibility that other potential causes were not the sole or most likely cause of [their] ovarian cancer." In other words, the courts found that by certifying the third prong, Kradin necessarily certified the fourth prong. We cannot, by construction, take from the plain language of the statute,[14] which required certification of the third *and* the fourth prongs.

The plaintiffs respond that, to the extent that the third and fourth prongs are redundant, the example of smoking defines and limits the category of items under the doctrine of ejusdem generis. Thus, the plaintiffs argue, Kradin's affidavits are sufficient because they ruled out environmental exposures as the sole or most likely cause of the plaintiffs' ovarian carcinomas.

The doctrine of ejusdem generis is unhelpful in this case as the statute only contains one specific example: "other potential causes (such as smoking)." Under the canon of ejusdem generis,

> when a statute lists by name several particular things, and concludes with a general term of enlargement, this latter term is to be construed as being ejusdem generis (i.e., of the same kind or class) with the things specifically named, unless, of course, there is something to show that a wider sense was intended. Here, however, because there is only one

---

[14] See *City of Albany*, 348 Ga. App. at 891 (1).

9

specific [potential cause], followed by a general [potential cause], and not a list of specific items separated by commas and followed by a general or collective term, the canon is inapplicable.[15]

The trial courts also erred in supplementing Kradin's conclusions based on their readings of the supporting medical documentation. For example, the state court in Case Number A21A0935 found:

> [A]lthough [Kradin's] affidavit does not include verbatim the specific word for word language of the statute, the affidavit in the context of the medical documentation submitted with it, does comply with the statutory requirement concerning other potential causes of the decedent's condition and satisfies the purpose of the statute. The court notes that the medical information on which the affidavit is based does not include any indication that any non-environmental factor would have been a potential cause of [Shrodes's] cancer.

Similarly, in Case Number A21A0832, the state court found that, because there was evidence that Kradin had considered Shiver's past medical history and negative health problems, he "effectively determined" that other potential causes were not the

---

[15] *Warren v. State*, 294 Ga. 589, 591, n. 2 (755 SE2d 171) (2014) (citations and punctuation omitted).

sole or most likely cause. The statute is clear, however, that it is the medical expert[16] who must certify to a reasonable degree of medical probability that other potential causes were not the sole or most likely cause of the injury at issue.[17]

Kradin did not certify "that other potential causes (such as smoking) were not the sole or most likely cause of the injury at issue[.]" Because the plain language of the statute required this certification, the trial courts should have dismissed the complaints without prejudice.[18]

*Judgments reversed. Doyle, P. J., and Brown, J., concur.*

---

[16] Specifically, the medical report must be signed by "a board certified internist, board certified pulmonologist, board certified pathologist, board certified occupational medicine physician, or board certified oncologist[.]" OCGA § 51-14-3 (17) (B) (ii).

[17] OCGA § 51-14-3 (17) (B) (ii).

[18] See OCGA § 51-14-6 (2) (E).

11